## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 22 2020, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ernest P. Galos
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Koyhan Iesha Smith,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 22, 2020

Court of Appeals Case No.
20A-CR-663

Appeal from the St. Joseph
Superior Court

The Honorable Keith C. Doi,
Magistrate

Trial Court Cause No.
71D08-1908-CM-2913

**Brown, Judge.**

[1] Koyhan Iesha Smith appeals her conviction for invasion of privacy as a class A misdemeanor and claims the evidence is insufficient to support her conviction. We reverse.

*Facts and Procedural History*

[2] On December 8, 2016, the trial court issued a no contact order under cause number 71D01-1608-F5-164 ("Cause No. 164") which ordered that Smith have "no contact" with Terrance Cannon "in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly" and that she not visit his address or "wherever [she] knows him[] to be located." State's Exhibit 1-a. The order remained in effect during her executed sentence and until her probation was terminated. The chronological case summary ("CCS") for Cause No. 164 contains entries dated December 8, 2016, stating Smith had pled guilty to battery resulting in moderate bodily injury and the court sentenced her to two years with one year suspended and ordered that the non-suspended sentence be served on community corrections and that she be placed on probation for one year. A petition to revoke was filed in August 2017, status hearings were held in October and November 2017 and February and April 2018, and an evidentiary hearing was held in May 2018. The CCS contains entries on June 5, 2018, stating the court had accepted Smith's admission to the violation of her probation and ordered that she continue on probation and comply with all of its terms and conditions. The CCS also contains entries stating a petition to revoke was filed in July 2018, that a hearing on violation of probation scheduled for December 19, 2018, was cancelled because there was

an agreed resolution, a sentencing hearing was held on January 8, 2019, and Smith was continued on probation under the same terms and conditions as previously entered.

[3] On the evening of August 11, 2019, South Bend Police Officers Andrew Ream and Matthew Tadevich were dispatched to an address on South Street near Four Winds Field in South Bend in response to a report that Smith's cell phone had been lost or stolen. According to Smith's friend, Smith had an altercation with someone "and somehow her phone came up missing," they used an app on the friend's phone to look for the phone, the app indicated Smith's phone was near Four Winds Field, and "we called the police." Transcript Volume II at 22. When the officers arrived at South Street, they noticed several people including Smith and Cannon. The officers indicated they spoke to the parties in this group for approximately ten or fifteen minutes. Officer Tadevich went across the street to speak to someone at an apartment who may have taken Smith's phone. At some point, Officer Ream learned through a computer check of the no contact order, which was brought to the attention of Officer Tadevich after he spoke to the person at the apartment across the street. According to Officer Tadevich, he had further questions for Smith, he called her and learned she was at a Taco Bell on LaSalle Avenue, and he "told her to wait for [him] at Taco Bell." *Id*. at 19. Officer Tadevich traveled to the restaurant and placed Smith under arrest. Officers Ream and Tadevich also saw Cannon at the Taco Bell location. According to Officer Tadevich, after he placed Smith

under arrest, Cannon walked up to him and told him, and was "pretty emphatic," that he was not with Smith's group. *Id*. at 21.

[4] The State charged Smith with invasion of privacy as a class A misdemeanor alleging that she knowingly violated the no contact order issued under Cause No. 164. At the bench trial, Officer Ream testified that he was dispatched to South Street and, when he arrived, he encountered several people including Smith and Cannon. He testified he had been wearing a body camera, and a recording taken from the camera was played for the court. He stated that the person in the recording wearing the white t-shirt was Cannon, the person wearing the pink tank top was Smith, and the recording was taken directly south of Four Winds Field on South Street.

[5] Officer Tadevich testified that he was dispatched to South Street near Four Winds Field and, when he arrived, there was a group of people and he encountered Smith as the complainant. He testified Cannon was there as well. When asked if he recalled seeing Cannon "approaching or part of the group or how was he involved," Officer Tadevich testified "[h]e was part of the group and I ended up speaking with him on that call as well." *Id*. at 17. He also indicated Cannon was present at the Taco Bell. When asked "when you were arresting Ms. Smith, were you alerted that Mr. Cannon was not with the group, that he walked up on them," Officer Tadevich replied affirmatively. *Id*. at 20. On redirect, when asked how he was alerted that Cannon "walked up on the group," Officer Tadevich answered: "After I had placed Ms. Smith under arrest and into my police vehicle, [Cannon] walked back to me to ask me why she

was in the vehicle, at which point he said he was at Taco Bell when I arrived and then left and then came back to Taco Bell." *Id*. On re-cross, when asked "[w]asn't Mr. Cannon pretty emphatic that he wasn't with the group," he answered "[w]ith regards to Taco Bell, yes." *Id*. at 21.

[6] Laquise Watson indicated she was Smith's friend, she was with Smith and another friend near Four Winds Field, and she was using an app on her phone to help Smith look for her cell phone. When asked "[w]as [Cannon] with you," Watson testified "[n]o - he was there, but he wasn't with us" and "he hangs over there in that area like, I mean, he whatever I guess called himself helping us, but basically he was running over there." *Id*. at 22. She testified "[a]ctually we called the police." *Id*. Watson testified that the police left the scene, "[w]e stood around for awhile still looking for the phone," and then she, Smith, and the other friend left and traveled in a car to the Taco Bell. *Id*. at 23. She testified that Cannon did not ride in the car. When asked "[a]t what point did Mr. Cannon show up at Taco Bell," she testified "I don't know where he came from, but he came from like the back side over there by . . . Michigan, he came from somewhere over there and walked towards Taco Bell, but that's already after the police was there and everything." *Id*. On cross-examination, Watson testified "when [the police] got out, for some reason she was having a conversation, next thing I know she was getting locked up," "I couldn't hear anything, but I could watching [sic] from the car everything that was going on," and "[s]o I don't know what was -- are they pulling her or nothing. And then after they was talking to her or whatever I seen [Cannon] come from the back

and he was like: She wasn't with me. And I'm like: So she getting locked up for you? Basically." *Id*. at 24-25.

[7] Following closing arguments, the court stated "[f]irst off, the whole Taco Bell situation is not even relevant at this particular point. That's not even part of my consideration," "[t]he second point is ignorance of the law is no excuse, that the court order was no contact as part [of] her probation," "[s]he obviously knew that was part of her probation. . . ." *Id*. at 33. The court found Smith guilty and sentenced her to time served.

## *Discussion*

[8] Smith argues the evidence is insufficient to support her conviction. She argues she "had gone to South Street in front of the city's baseball stadium, a public place, in search of the telephone," "[w]hen police arrived, Terrance Cannon was also on the scene," "[w]hile police spoke with [her] for 10-15 minutes, Mr. Cannon meandered about the area and interjected into the investigation," and Watson indicated that Cannon "was not a part of her group" and that he "would hang out in the general area." Appellant's Brief at 10. She points out that she complied with the officer's instruction to wait at Taco Bell for police, and that the brief interaction of the parties took place on a public street and the evidence did not indicate she had any intent to have any communication or contact with Cannon.

[9] When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable

inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[10] A person who knowingly or intentionally violates a no contact order issued as a condition of probation or an executed sentence commits invasion of privacy as a class A misdemeanor. *See* Ind. Code § 35-46-1-15.1. A person engages in conduct "knowingly" if, when she engages in the conduct, she is aware of a high probability that she is doing so. Ind. Code § 35-41-2-2.

[11] The record reveals the police officers were dispatched to South Street because Smith had reported that her cell phone had been stolen. When they arrived, the officers saw Smith and Cannon among others at the scene, and at that time they did not know of the no contact order. Officer Tadevich eventually left to speak with a suspect across the street, and during that time, a computer check revealed the existence of the no contact order. Officer Tadevich testified that, after he spoke with the suspect, he "called Ms. Smith, because [he] had further questions on that call for her," she told him she was at the Taco Bell on LaSalle Avenue, and he "told her to wait for [him] at Taco Bell." Transcript Volume II at 18-19. Watson testified that Cannon "wasn't with us" and "he hangs over there in that area." *Id.* at 22. She also testified Cannon did not ride in the car

to Taco Bell with her and her group, and that he showed up after the police were already there. Cannon told Officer Tadevich, and was "pretty emphatic," that he was not with Smith's group. *Id.* at 21. On the way to jail, Smith stated she believed the no contact order had been dropped. The no contact order provided that Smith have no contact with Cannon and ordered that she not visit his address or "wherever [she] knows him[] to be located." State's Exhibit 1-a. The trial court specifically stated that it did not consider the events at the Taco Bell. With respect to the South Street location, the evidence presented established, at most, the mere presence of Cannon. The officers were never asked whether Smith and Cannon interacted with each other, whether she communicated with him, or about the nature of any interaction or communication between them. At a minimum, the State did not present evidence establishing beyond a reasonable doubt that Smith possessed an intent to contact or communicate with Cannon in violation of the no contact order.

[12] Based upon the record, and under these circumstances, the evidence did not prove beyond a reasonable doubt that Smith committed invasion of privacy. *See Hunter v. State*, 883 N.E.2d 1161, 1163-1164 (Ind. 2008) (observing that "contact" is not commonly understood "to occur by mere presence alone" and includes an element of communication, or an establishing of communication with someone, and concluding the evidence was insufficient to establish the appellant violated a no contact provision of his probation where the record revealed occasions of simply momentary presence in the same residence with children where he immediately left without interacting with them); *cf. Luke v.*

*State*, 51 N.E.3d 401, 410-419 (Ind. Ct. App. 2016) (observing the appellant "stared [the victims] down pretty much the whole time [they] were at work" and finding the appellant's actions "far exceeded the 'mere presence' the Court discussed in *Hunter*" and, despite warnings from attorneys and police to go inside if one of the victims was in the parking lot, the appellant instead stared directly at the victims and stated that he would be outside more and the victims "just needed to get used to it"), *trans. denied*.

[13] For the foregoing reasons, we reverse Smith's conviction.

[14] Reversed.

Robb, J., and Crone, J., concur.